**FILED**

**APR - 8 2009**

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------------ X

**Case: 1:09-cv-00646**
**Assigned To : Roberts, Richard W.**
**Assign. Date : 4/8/2009**
**Description: General Civil**

<u>**COMPLAINT**</u>

**Jury Trial Demanded**



Chaim Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Rivka Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Mushka Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Arye Leib Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Menachem Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Chana Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Efraim Kaplan
24 Givat Shoshana St.
Tzfat, Israel

Michael Fuchs
13 Raban Gamliel St.
Netanya, Israel

Avishai Reuvane
76/5 Agrippas
Jerusalem,Israel

Elisheva Aron
76/5 Agrippas
Jerusalem, Israel

Chayim Kumer
208/4 Hashivah St.
Tzfat, Israel

Nechama Kumer
208/4 Hashivah St.
Tzfat, Israel

Keren Ardstein
27 HaArizal St.
Tzfat, Israel

Brian Ardstein
27 HaArizal Street.,
Tzfat, Israel

Ma'ayan Ardstein
27 HaArizal Street.
Tzfat, Israel

Noa Ardstein
27 HaArizal Street.
Tzfat, Israel

Ariel Chaim Ardstein
27 HaArizal Street.
Tzfat, Israel

Netiya Yeshua Ardstein
27 HaArizal Street.
Tzfat, Israel

Laurie Rappeport
60 Tet Vav St.
Tzfat, Israel

Margalit Rappeport
60 Tet Vav St.
Tzfat, Israel

Yair Mor
28 Elkabetz Shlomo St.
Tzfat, Israel

Theodore Greenberg
66B Jabotinsky Road
Jerusalem, Israel

Maurine Greenberg
66B Jabotinsky Road
Jerusalem, Israel

Jacob Katzmacher
13 Ridbaz St.
Tzfat, Israel

Deborah Chana Katzmacher
13 Ridbaz St.
Tzfat, Israel

Chaya Katzmacher
13 Ridbaz St.
Tzfat, Israel

Mikimi Steinberg
10 Tzahal St.
Tzfat, Israel

Jared Sauter Hachezel
35 B St.
Shoham, Israel

Danielle Sauter Hachezel
35 B St.
Shoham, Israel

Myra Mandel Meshek
36 Moshav Hemed
Israel,

-against-

Hezbollah
a.k.a. Hizbullah, Hizbollah, Hezballah, Hizballah
an unincorporated association
c/o Lebanese Labor Minister Mohammed Fneish
(Spokesperson and member of Hezbollah)
Lebanese Labor Ministry
Shiah, Beirut, Lebanon

and

DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA,
a.k.a. NORTH KOREA
Ministry of Foreign Affairs
c/o Foreign Minister, Pak Ui Chun
Jung song-dong, Central District
Pyongyang, DPRK,

Defendants.

------------------------------------------------------------------------- X

Plaintiffs, by their undersigned attorneys, complain of the defendants and allege the

following based upon information and belief:

## INTRODUCTION

1.      This is an action brought pursuant to the U.S. Antiterrorism Act ("ATA"), 18

U.S.C. § 2333, and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*., on

behalf of Americans citizens who were injured as a result of rockets fired by the Hezbollah

terrorist organization with the aid and support of the Democratic People's Republic of Korea

(hereinafter "North Korea").

4

## JURISDICTION

2.      This Court has jurisdiction over this action and over defendant North Korea pursuant to 28 U.S.C. §§ 1330, 1331, and 1605A of the FSIA.

3.      In addition, this Court has jurisdiction over this action and over defendant Hezbollah pursuant to Federal Rule of Civil Procedure 4(k)(2) and 18 U.S.C. § 2333 of the ATA.

4.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in this Court.

## PARTIES

### (a) Plaintiffs

5.      Plaintiffs are thirty American citizens who reside in Israel and were all harmed as a result of defendant Hezbollah's rocket attacks on northern Israel between July 12 and August 14, 2006.  Plaintiffs include Chaim Kaplan, Rivka Kaplan, Mushka Kaplan, Arye Leib Kaplan, Menachem Kaplan, Chana Kaplan, Efraim Kaplan, Michael Fuchs, Avishai Reuvane, Elisheva Aron, Chayim Kumer, Nechama Kumer, Keren Ardstein, Brian Ardstein, Ma'ayan Ardstein, Noa Ardstein, Ariel Chaim Ardstein, Netiya Yeshua Ardstein, Laurie Rappeport, Margalit Rappeport, Yair Mor, Theodore Greenberg, Maurine Greenberg, Jacob Katzmacher, Deborah Chana Katzmacher, Chaya Katzmacher, Mikimi Steinberg, Jared Sauter, Danielle Sauter, and Myra Mandel.  The details of the attacks and the nature of plaintiffs' injuries are set forth below.

### (b) Defendants

6.      Defendant Hezbollah is a radical Shia terrorist organization based in Lebanon that has been designated by the United States as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

7.      Hezbollah was formed in 1982 and takes its ideological inspiration from the Iranian revolution and the teachings of the late Ayatollah Khomeini.  Hezbollah generally follows the religious guidance of Khomeini's successor, Iranian Supreme Leader Ali Khamenei, and is closely allied with Iran.

8.      According to the U.S. Department of State, "Hizballah remains the most technically capable terrorist group in the world."  In addition, "Hizballah's terrorist attacks have included the suicide truck bombings of the U.S. Embassy and U.S. Marine barracks in Beirut in 1983, and the U.S. Embassy annex in Beirut in 1984, and the 1985 hijacking of TWA flight 847, during which a U.S. Navy diver was murdered."

9.      Moreover, as discussed by a member of the FBI's Counterterrorism Division who testified before the U.S. House Committee on International Relations on September 28, 2006 regarding Hezbollah's global reach, "[w]ithin the United States, Hezbollah associates and sympathizers have engaged in a wide range of criminal activities, to include money laundering, credit card fraud, immigration fraud, food stamp fraud, bank fraud, and narcotics trafficking."

10.     Defendant North Korea was designated in 1988 as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act, (50 U.S.C. 2405(j)) after the Secretary of State determined that "North Korea is a country which has repeatedly provided support of acts of international terrorism." *Notice, Determination Pursuant to Section 6(j) of the Export Administration Act of 1979; North Korea*, 53 Fed. Reg. 3477 (Feb. 5, 1988), 1988 WL 276528.

11.     North Korea remained a designated state sponsor of terrorism at the time of plaintiffs' injuries and was only removed from the U.S. State Sponsor of Terrorism list on October 11, 2008 after a determination by Secretary of State Condoleezza Rice. *Notice, Rescission of Determination Regarding North Korea*, 73 Fed. Reg. 63540 (Oct. 24, 2008).  This

determination was based on a presidential memorandum, *Certification of Rescission of North Korea's Designation as a State Sponsor of Terrorism*, 73 Fed. Reg. 37351 (Jun. 26, 2008), wherein President Bush certified that:

    (i)    the Government of North Korea has not provided any support for international terrorism during the preceding 6-month period; and

    (ii)    the Government of North Korea has provided assurances that it will not support acts of international terrorism in the future.

12.    The presidential memorandum of June 26, 2008, however, did not address intelligence information regarding North Korean support for international terrorism prior to December 26, 2007 or H.R. 3650, the "North Korean Counterterrorism and Nonproliferation Act," a bill introduced into Congress on September 25, 2007, which cited reports that "North Korea was involved in training in guerilla warfare of Hezbollah cadres who subsequently were involved in operations against Israeli forces in south Lebanon."

## FACTUAL ALLEGATIONS

### Hezbollah Rocket Attacks on Northern Israel

13.    On July 12, 2006 Hezbollah terrorists in southern Lebanon launched an unprovoked attack on Israel by firing rockets into Israel while simultaneously kidnapping Israeli soldiers who were patrolling Israel's northern border.

14.    Thereafter, the Israeli military attempted to rescue its captured soldiers, and according to the U.S. Department of State "[d]uring the next 34 days, Hizballah fired over 4,000 Katyusha rockets and other missiles into northern Israel, forcing the residents of Haifa, Nahariya, Tiberias, and other northern communities into bunkers."

15.    According to sources from the Israeli Ministry of Foreign Affairs, as a consequence of Hezbollah's rocket attacks on Israeli towns and cities, at least 43 Israeli civilians

7

died in the conflict, 4,262 were injured, over 300,000 people had to be evacuated from their homes, and businesses in northern Israel lost approximately $1.4 billion in revenues.

**Plaintiffs' Injuries from Hezbollah Rocket Attacks**

16.     Between July 12, 2006 and August 14, 2006, Hezbollah fired thousands of rockets at civilians in northern Israel, and plaintiffs were injured by the Hezbollah rockets as detailed below.

17.     On July 13, 2006, plaintiff Chaim Kaplan was severely injured by two Hezbollah rockets which landed in the Israeli city of Safed. The first rocket landed outside his car and severely injured him. The second rocket struck the Kaplan family's home, and also injured Chaim's wife, plaintiff Rivka Kaplan, as well as the couple's minor children plaintiffs Mushka Kaplan, Arye Leib Kaplan, Menachem Kaplan, Chana Kaplan and Efraim Kaplan. As a result of these rocket attacks plaintiffs Chaim Kaplan, Rivka Kaplan, Mushka Kaplan, Arye Leib Kaplan, Menachem Kaplan, Chana Kaplan and Efraim Kaplan suffered severe physical, psychological, emotional and financial injuries.

18.     On July 13, 2006, at approximately 14:30, plaintiff Michael Fuchs was driving in his car in the Israeli city of Safed when a rocket launched by Hezbollah struck nearby. Massive amounts of shrapnel penetrated Fuchs' car and caused him severe injuries. Fuchs lost large quantities of blood, lost consciousness and was rushed to the intensive care unit of Rebecca Ziv Hospital. Fuchs' throat was slashed as a result of the explosion and his right hand remains completely paralyzed. Fuchs has been permanently disabled. He is unable to work and relies on intensive and expensive medical treatments on an ongoing basis. As a result of this rocket attack Michael Fuchs suffered severe physical, psychological, emotional and financial injuries.

19.     Plaintiffs Avishai Reuvane and Elisheva Aron were injured on July 13, 2006 by a

8

rocket fired by Hezbollah which landed in the Israeli city of Safed. As a result of this rocket attack Avishai Reuvane and Elisheva Aron suffered severe physical, psychological, emotional and financial injuries.

20.     Plaintiff Chayim Kumer, a resident of Safed, suffered a nervous breakdown and was hospitalized as a result of the Hezbollah rocket attacks, which in turn caused severe harm to his wife, Plaintiff Nechama Kumer. As a result of the Hezbollah rocket attacks plaintiffs Chayim Kumer and Nechama Kumer suffered severe psychological, emotional and financial injuries.

21.     Plaintiffs Keren Ardstein and Brian Ardstein resided in Safed at the time of the Hezbollah Rocket Attacks. Numerous rockets landed near the family's home. Karen was pregnant at the time the attacks began and due to the ongoing strain, stress and anxiety, and the rocket explosions near the Ardstein home she suffered a miscarriage and lost her baby. In the wake of the miscarriage, Karen suffered from post-partum depression, damage to her immune system and has developed other medical complications. Brian was greatly traumatized by the rocket attacks and the loss of his baby. In addition, as a result of the rocket attacks and the collapse of tourism in Israel, Brian a licensed tour guide lost all of his work and had extreme difficulties supporting his family. The Ardsteins' minor children, plaintiffs Ma'ayan Ardstein, Noa Ardstein, Ariel Chaim Ardstein and Netiya Yeshua Ardstein all suffered emotional and psychological trauma from the Hezbollah rocket attacks. All of the children have been diagnosed with severe emotional disorders and are receiving on-going psychiatric treatment and therapy. As a result of the Hezbollah rocket attacks, Brian, Keren, Ma'ayan, Noa, Ariel Chaim and Netiya Yeshua Ardstein suffered severe physical, psychological, emotional and financial injuries.

22.     On July 13, 2006 at approximately 7:00 p.m. a rocket launched by Hezbollah landed outside the home of plaintiffs Laurie Rappeport and her minor daughter Margalit

9

Rappeport in the Israeli city of Safed. The powerful explosion threw Margalit, who was playing outside on a wall, into the air. Margalit was hospitalized as a result of the explosion and suffered severe psychological trauma. Laurie was emotionally distraught over the injury sustained by her young daughter. As a result of this rocket attack Laurie and Margalit Rappeport suffered severe physical, psychological, and emotional injuries.

23.     On July 19, 2006 the art gallery owned by plaintiff Yair Mor in Safed was directly hit by a rocket launched by Hezbollah. The business was completely destroyed in the blast. Plaintiff Yair Mor was extremely traumatized by the destruction of the family's business. As a result of this rocket attack Yair Mor suffered severe psychological, emotional and financial injuries.

24.     In the summer of 2006, plaintiffs Theodore Greenberg and Maurine Greenberg were the proprietors of a tourism business in the Israeli city of Safed. The Hezbollah rocket attacks caused a complete halt in tourism in northern Israel for several months during the peak tourism season, which in turn caused the Greenberg's severe financial damage. As a result of the Hezbollah rocket attacks, Theodore Greenberg and Maurine Greenberg suffered emotional distress and severe financial damages.

25.     In the summer of 2006, plaintiffs Jacob Katzmacher and Deborah Chana Katzmacher were the proprietors of an art gallery in the Israeli city of Safed (a business that caters almost exclusively to tourists). The Hezbollah rocket attacks caused a complete halt in tourism in northern Israel for several months during the peak tourism season, which in turn caused the Katzmachers severe financial damage. As a result of the Hezbollah rocket attacks, Jacob Katzmacher and Deborah Chana Katzmacher suffered emotional distress and severe financial damages.

26.     On July 13, 2008, a rocket launched by Hezbollah landed a few meters away from plaintiff Chaya Katzmacher, in the Israeli city of Safed causing her psychological and emotional damage. As a result of this rocket attack, Chaya Katzmacher suffered severe psychological and emotional damage.

27.     On August 11, 2006, at approximately 1:15 p.m., a rocket launched by Hezbollah landed directly on plaintiff Mikimi Steinberg's house in Safed severely damaging the house and the possessions therein. As a result of this rocket attack, Mikimi Steinberg suffered emotional distress and severe financial damages.

28.     In the summer of 2006, plaintiffs Jared Sauter and Danielle Sauter were the owners of a tourism business in the town of Rosh Pina in the Galilee. The Hezbollah rocket attacks caused a complete halt in tourism in northern Israel for several months during the peak tourism season, which in turn caused the Sauters severe financial damage. The Sauters' business collapsed and they were forced to relocate to a different city. As a result of the Hezbollah rocket attacks, Jared Sauter and Danielle Sauter suffered emotional distress and severe financial damages.

29.     In the summer of 2006 plaintiff Myra Mandel was the owner of an art gallery in Safed. Rockets launched by Hezbollah damaged her art gallery. Additionally, the Hezbollah rocket attacks caused a complete halt in tourism in northern Israel for several months during the peak tourism season, which in turn caused Mandel severe financial damage. As a result of the Hezbollah rocket attacks, Myra Mandel suffered emotional distress and severe financial damages.

**North Korea's Provision of Material Support to Hezbollah**

30.     During  the 2006 conflict with Hezbollah Israeli forces obtained intelligence

11

information regarding North Korea's efforts to train and equip Hezbollah fighters, including an

extensive tunnel system that was built with the assistance of North Korea so that Hezbollah

could safely store the rockets it used to fire at Israeli towns and cities.

31.     Additional informational regarding North Korea's support for Hezbollah was

subsequently disclosed in reports from several intelligence sources, which were summarized in a

May 8, 2008 Congressional memorandum provided to several members of the U.S. House

Foreign Affairs Committee.  According to the Congressional memorandum:

> French, Israeli, and South Korean sources have reported an extensive program by
> North Korea to provide arms and training to Hezbollah. The French publication,
> Paris Intelligence Online, published a report on North Korean training of
> Hezbollah in September 2006. Paris Intelligence Online reported that North
> Korean training of Hezbollah cadre reportedly began in the late 1980s and early
> 1990s, including training in North Korea. Three current top Hezbollah officials
> were said to have received training in North Korea: Hassan Nasrallah,
> Hezbollah's secretary-general and head of Hezbollah's military organization;
> Ibrahim Akil, the head of Hezbollah's security and intelligence service, and
> Mustapha Badreddine, Hezbollah's counter-espionage chief. According to Paris
> Intelligence Online, the North Korean program reportedly expanded after 2000
> when Israeli forces withdrew from southern Lebanon and Hezbollah forces
> occupied the area. North Korea is said to have dispatched trainers to southern
> Lebanon where they instructed Hezbollah cadre in the development of extensive
> underground military installations (North Korea is believed to have constructed
> extensive military facilities inside North Korea) One such North Korean-assisted
> facility in southern Lebanon reportedly was a 25 kilometer underground tunnel
> that Hezbollah used to move troops. Hezbollah's underground facilities,
> according to reports, significantly improved Hezbollah's ability to fight the
> Israelis during the 2006 Israel-Lebanon war.
>
> In November 2007, Professor Moon Chung-in, a professor at South Korea's
> Yonsei University and adviser to the Roh Moo-hyun Administration, reported
> assessments from the Israeli intelligence agency, Mossad, that "vital missile
> components" of Hezbollah missiles fired into Israel during the 2006 war came
> from North Korea. Dr. Moon stated that Mossad believes that the missiles with
> North Korean components were assembled in Iran and were transported to
> Hezbollah in Lebanon via Syria. According to Professor Moon, Mossad
> "partially blames North Korea" for the effectiveness of Hezbollah's missile
> strikes into Israel. (For more details on these reports of North Korean support for
> Hezbollah, see CRS Report 30613, North Korea: Terrorism List Removal?)

32.     The reports cited by the May 8, 2008 Congressional memorandum indicate that North Korean support played a significant role in providing Hezbollah with the capacity to terrorize civilians living in Israel's northern region.

33.     By providing material support to Hezbollah, as defined by 18 U.S.C. § 2339A, North Korea aided & abetted the Hezbollah rocket attacks that subsequently harmed all plaintiffs.

### FIRST CLAIM FOR RELIEF
### AGAINST HEZBOLLAH
### ON BEHALF OF ALL PLAINTIFFS
### ACTION FOR INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)

34.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

35.     Plaintiffs have been injured in their person, property or business by reason of acts of international terrorism committed by the defendants that involved violence, were dangerous to human life, and violated the criminal laws of the United States, including the prohibitions against harming a U.S. citizen as set forth in 18 U.S.C. § 2332.

36.     The defendants' activities were intended to: (a) intimidate or coerce the civilian population of the State of Israel; (b) influence the policy of the government of the State of Israel by intimidation or coercion; and (c) affect the conduct of the government of the State of Israel by mass destruction, assassination, or kidnapping.

37.     The acts of terrorism set forth herein were extreme and outrageous and were committed with the knowledge of, and intention to, cause extreme physical pain and suffering to plaintiffs, and extreme emotional distress to plaintiffs' family members by reason of defendants' acts of international terrorism.

### SECOND CLAIM FOR RELIEF

## AGAINST NORTH KOREA ON BEHALF OF ALL PLAINTIFFS
## ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

38.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

39.     North Korea is a foreign state that at all relevant times has been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. §1605A, including within the 6-month period before plaintiffs' claims were filed as specified by §1605A(a)(2)(A)(i)(I).

40.     North Korea provided material support and resources, within the meaning of 28 U.S.C. §1605A(h)(3), for the purpose of facilitating Hezbollah terrorist activities, including acts of torture, extrajudicial killing, and hostage taking.

41.     Such material support included, but is not limited to, training, expert advice or assistance, facilities, weapons, lethal substances, explosives, and personal as defined by 18 U.S.C. § 2339A.

42.     As a consequence of defendant North Korea's provision of material support to Hezbollah, Hezbollah was able to sustain a prolonged campaign of international terrorism by firing rockets into northern Israel and all plaintiffs were harmed by such rockets.

43.     The harm and injuries suffered by the plaintiffs due to Hezbollah rocket attacks were the direct and proximate result of defendants' conduct described herein.

44.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## THIRD CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## PURSUANT TO APPLICABLE LAW

45.     The allegations set forth in the preceding paragraphs are incorporated by

reference as though fully set forth herein.

46.     Defendants' engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, emotional distress.

47.     Defendants' conduct was willful, outrageous, egregious, and dangerous to human life, and violates applicable criminal law, including all international standards of civilized human conduct and common decency.

48.     Defendants' conduct and activities terrorized plaintiffs and was the actual and proximate cause of plaintiffs' severe emotional distress.

49.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constituted a threat to the public at large warranting an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS
## ASSAULT PURSUANT TO APPLICABLE LAW

50.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

51.     Defendants and/or their agents committed intentional knowing and/or reckless acts or aided and abetted acts that placed plaintiffs in reasonable fear and apprehension of offensive and harmful contact, including the fear and apprehension of serious bodily injury or death.

52.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FIFTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS
## CHAIM KAPLAN, RIVKA KAPLAN, MUSHKA KAPLAN, ARYE LEIB KAPLAN,

15

**MENACHEM KAPLAN, CHANA KAPLAN, EFRAIM KAPLAN, MICHAEL FUCHS, AVISHAI REUVANE, ELISHEVA ARON, AND MARGALIT RAPPEPORT BATTERY PURSUANT TO APPLICABLE LAW**

53.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

54.     Plaintiffs Chaim Kaplan, Rivka Kaplan, Mushka Kaplan, Arye Leib Kaplan, Menachem Kaplan, Chana Kaplan, Efraim Kaplan, Michael Fuchs, Avishai Reuvane, Elisheva Aron, and Margalit Rappeport were all physically harmed and battered by Hezbollah rockets.

55.     The defendants' actions were the proximate cause of the rocket explosions that harmed plaintiffs Chaim Kaplan, Rivka Kaplan, Mushka Kaplan, Arye Leib Kaplan, Menachem Kaplan, Chana Kaplan, Efraim Kaplan, Michael Fuchs, Avishai Reuvane, Elisheva Aron, Laurie Rappeport, and Margalit Rappeport.

104.    Defendants' actions were outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

(a)     Enter judgment against the defendants, jointly and severally, in favor of the plaintiffs for compensatory damages in an amount to be determined at trial, but for no less than an amount of $100 million;

(b)     Enter judgment against the defendants, jointly and severally, in favor of the plaintiffs for punitive damages and/or treble damages in amounts to be determined at trial;

(c)     Enter judgment against defendants in favor of the plaintiffs for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: April 7, 2009
          Brooklyn, New York

                                             Respectfully submitted,

                                             THE BERKMAN LAW OFFICE, LLC
                                             *Counsel for Plaintiffs*

                        By:

                                             Robert J. Tolchin
                                             (D.C. Bar #NY0088)

                                             111 Livingston Street, Suite 1928
                                             Brooklyn, New York 11201
                                             (718) 855-3627
                                             Fax: (718) 504-4943

TARNOR, PLLC                                 NITSANA DARSHAN-LEITNER & CO.
Nathaniel A. Tarnor                          Nitsana Darshan-Leitner
D.C. Bar No. 985457                          (Israeli co-counsel)
1200 G Street, NW, Suite 800                 10 Hata's Street
Washington, DC 20005                         Ramat Gan, 52512 Israel
Tel: (202) 684-8172

17