UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

CHAIM KAPLAN, *et al.*,

                         Plaintiffs,                  Civ. No. 19-03187-BMC

           -against-

HEZBOLLAH,

                         Defendant.

------------------------------------------------------------------- X

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR ENTRY OF FINAL JUDGMENT BY DEFAULT

### INTRODUCTION

Pursuant to the Court's two electronic orders entered on April 23, 2021, the plaintiffs hereby respectfully move, pursuant to Fed. R. Civ. P. 55(b)(2), for entry of final judgment by default in their favor and against defendant Hezbollah, in the amounts awarded in plaintiffs' action against North Korea (detailed below), to be trebled pursuant to 18 U.S.C. § 2333.[1]

### RELEVANT BACKGROUND

The plaintiffs are American citizens injured in rocket and missile attacks on civilian population centers in Israel, which were carried out by defendant Hezbollah between July 12 and August 14, 2006. Plaintiffs filed this action on April 8, 2009, in the United States District Court for the District of Columbia ("D.C. Court"). (DE 1). On December 15, 2009, plaintiffs filed a First Amended Complaint ("FAC"), which remains the operative complaint in this case. (DE 5).

---

[1] As discussed below, one of the plaintiffs, Danielle Sauter, received an award against North Korea but is not entitled to, and so does not seek, an award under 18 U.S.C. § 2333 in this case.

The FAC named as defendants: Hezbollah; the Democratic People's Republic of Korea ("North Korea"); and unidentified officials, employees and agents of North Korea (named as John Does 1-10). The FAC asserts claims against Hezbollah under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331, *et seq.*, and claims against North Korea and the Doe defendants under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. (*Id*. at ¶¶ 52-72). Additionally, the FAC asserted various non-federal tort claims against all defendants. (*Id*. at ¶¶ 73-86).

Plaintiffs attempted to effect service on Hezbollah by delivering the summons and complaint to Mohammed Fneish, a senior Hezbollah leader. The D.C. Court found this service insufficient, and directed plaintiffs to effect service by publication in Lebanese newspapers. (DE 19). After service by publication in Lebanon proved impossible, plaintiffs moved for leave to effect service by delivery to Hezbollah's television station, al Manar. (DE 22-23). The D.C. Court granted this motion in part, and directed plaintiffs to effect service on Hezbollah by serving al-Manar, and two other Hezbollah entities, al-Nour radio and the Lebanese Media Group, by international courier. (Minute Order 11/29/2010). Plaintiffs successfully served Hezbollah as directed by the D.C. Court (DE 25-29), and Hezbollah's default was entered on February 9, 2011 (DE 30).

In the meanwhile, the instant plaintiffs filed a related ATA and FSIA action in the D.C. Court, against the Islamic Republic of Iran ("Iran"), various Iranian governmental defendants, Bank Saderat PLC ("BSPLC"), and Bank Saderat Iran ("BSI"). *Kaplan, et al., v. Central Bank of the Islamic Republic of Iran, et al.*, Civil No. 10-483(D.D.C.) ("Iran Action"). BSPLC and BSI appeared in the Iran Action and moved to dismiss the complaint on multiple grounds. On August 20, 2013, the D.C. Court issued a decision that (among other things) dismissed plaintiffs' ATA

action against BSPLC on the basis of the ATA's "act of war" exception, 18 U.S.C. § 2336(a). *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013).

That same day – August 20, 2013 – the D.C. Court issued an Order in *this* action, dismissing *sua sponte* plaintiffs' ATA claims against Hezbollah on the basis of the "act of war" exception, and incorporating by reference the reasoning contained in its opinion in the Iran Action. (DE 50).

On September 30, 2016, the D.C. Court entered final judgment against North Korea under the FSIA (DE 83-84). That judgment rendered final and appealable the D.C. Court's earlier dismissal of plaintiffs' ATA claims against Hezbollah on "act of war" grounds, and plaintiffs timely appealed that dismissal. In parallel, plaintiffs also appealed the "act of war" dismissal of their ATA claims against BSPLC in the Iran Action.

The D.C. Circuit vacated the dismissal of the plaintiffs' ATA claims against Hezbollah (and BSPLC), finding that the district court had impermissibly assumed "hypothetical jurisdiction" by ruling on the "act of war" exception (a merits issue) without first addressing personal jurisdiction. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 509-514 (D.C. Cir. 2018). The D.C. Circuit therefore remanded the action "for the district court to determine whether it has personal jurisdiction over" Hezbollah. *Id*. at 516. *Cf.* Mandate (DE 93) ("remand[ing] to the District Court to determine whether it has personal jurisdiction over" Hezbollah).

After remand, the D.C. Court severed plaintiffs' ATA claims against Hezbollah and transferred them to this Court. (DE 97-98).[2] It is well-established that "severed claims become

---

[2] Notably, in its decision severing and transferring the ATA claims to this Court, the D.C. Court also ruled that the "act of war" defense is no longer available to Hezbollah in this case, due to a statutory amendment enacted in October 2018. (*See* DE 98 at 3).

3

entirely independent actions to be tried, and judgment entered thereon, independently." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999) (quoting 9 Wright & Miller, Federal Practice and Procedure: Civil 2d § 2387). Therefore, following severance and transfer to this Court, the sole claims in this action are the ATA claims and the sole defendant in this action is Hezbollah.

## DISCUSSION

### A. Liability and Jurisdiction

Hezbollah's willful default establishes its liability in this case, because "a party's default is deemed as an admission of all well-pleaded allegations of liability." *Trustees of the Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation*, 2018 WL 4268907, at *3 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018).

The allegations against Hezbollah in plaintiffs' FAC are detailed, extensive and extremely well-pleaded. (DE 5 at ¶¶ 11-21; 29-60). These allegations easily satisfy the definition of "international terrorism" in ATA § 2331, as "activities" that "occur primarily outside the territorial jurisdiction of the United States," "involve violent acts or acts dangerous to human life … that would be a criminal violation if committed within the jurisdiction of the United States," and "appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction." Indeed, a "suicide bombing is an act that inherently involves violence and objectively would appear intended to intimidate a population or government." *Weiss v. Nat'l Westminster Bank, PLC.*, 993 F.3d 144, 162 (2d Cir. 2021). All the more so the firing of thousands of rockets and missiles at civilian population centers over an international border for over a month.

Likewise, the FAC clearly alleges that plaintiffs were harmed "by reason of" Hezbollah's acts of international terrorism, as required by ATA § 2333(a).

Thus, Hezbollah's liability under ATA § 2333(a) has been established.

The Court must also ensure that it has subject matter and personal jurisdiction before entering default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (brackets and citation omitted); *Hamburg-Sud N. Am., Inc. v. Bomix Industria de Embalagens Ltda.*, 2017 WL 9482108, at *4 (E.D.N.Y. Nov. 3, 2017), *report and recommendation adopted*, 2017 WL 6606896 (E.D.N.Y. Dec. 26, 2017) ("[B]efore a court grants a motion for default judgment, it may *sua sponte* assure itself that it has subject matter jurisdiction over the proceeding.").

This Court has subject-matter jurisdiction over this action. Because plaintiffs' claims against Hezbollah are brought under a federal cause of action, *i.e.*, the ATA, 18 U.S.C. § 2333, this Court has original subject-matter jurisdiction under 28 U.S.C. § 1331.

This Court also has personal jurisdiction over Hezbollah, on the basis of the "conspiracy theory of jurisdiction" recognized by the Second Circuit in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). *Schwab* held that in order to establish "conspiracy" jurisdiction, the plaintiff must show[3] that "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Id*.

---

[3] "When seeking a default judgment, although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a prima facie showing, and may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd.*, 348 F. Supp. 3d 365, 389 (S.D.N.Y. 2018) (quotation marks and citation omitted).

5

These elements are present here:

The Hezbollah rocket and missile attacks that injured the plaintiffs were part and parcel of the campaign of brutal terrorist violence waged by Hezbollah against both the State of Israel and the United States for nearly 40 years, which has resulted in the murder of hundreds of American and Israel citizens, and the maiming of thousands more. (*See* DE 5 at ¶¶ 12-21; Declaration of Professor Barry Rubin (DE 36) at ¶ 25; Declaration of Dr. Guy Podoler (DE 36) at ¶ 26). *See also* Congressional Research Service Report, "Lebanese Hezbollah," (Feb. 1, 2021) (discussing history of Hezbollah attacks on the United States and Israel), attached as Exhibit A.[4]

Hezbollah's on-going terrorist campaign, pursuant to which the plaintiffs were harmed, clearly constitutes a criminal conspiracy among the participants therein. Indeed, Hezbollah itself constitutes, as an organization, a criminal conspiracy. A conspiracy is constituted by "an agreement to commit an unlawful act" or "a partnership in criminal purposes." *Bahlul v. U.S.*, 840 F.3d 757, 800 (D.C. Cir. 2016) (Wilkins, C.J., concurring) (quotation marks omitted); *U.S. v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (citation omitted). The federal courts have therefore repeatedly held that organizations that regularly engage in crime or violence as matter of policy or practice –such as terrorist groups and gangs – constitute conspiracies. Thus, in *Extradition of Marzook*, 924 F. Supp. 565 (S.D.N.Y. 1996), the court held that Hamas itself – as an organization – constituted a conspiracy. *Id*. at 579-585 (finding "the conspiracy known as Hamas" responsible for various terrorist attacks). Similarly, in *U.S. v. Bingham*, 653 F.3d 983, 998 (9th Cir. 2011), the court found that the Aryan Brotherhood prison gang constituted, as an organization, a conspiracy. *See also U.S. v. Diaz*, 176 F.3d 52 (2d Cir. 1999) (finding that a "street gang known as the 'Latin Kings'" itself constituted a conspiracy); *U.S. v. Robinson*, 978 F.2d 1554, 1562–63 (10th Cir.

---

[4] Also available at https://crsreports.congress.gov/product/pdf/IF/IF10703.

1992) (same regarding the Crips); *U.S. v. Rivera*, 292 F.Supp. 2d 827, 833 (E.D. Va. 2003) (same regarding the MS-13 gang); *Zelaya v. U.S.*, 2013 WL 4495788, at *6 (D. Md. Aug. 20, 2013) (same).

One of Hezbollah's co-conspirators in the years prior to the attacks in which plaintiffs were injured was Alexei Saab. According to a sworn complaint executed by FBI Special Agent Anthony J. Cipriano on July 8, 2019, and filed in *U.S. v. Saab*, 19-cr-676-PGG (S.D.N.Y.), Saab conducted extensive activities in furtherance of the Hezbollah terrorist conspiracy in New York and elsewhere in the U.S., commencing in 2000. (*See* Exhibit B at ¶¶ 2-4; ¶¶ 6-8; and ¶¶ 16-33).

Since Saab conducted his activities in furtherance of the Hezbollah conspiracy while physically present within the United States, his "overt acts in furtherance of the conspiracy" unquestionably "had sufficient contacts" to subject him to U.S. jurisdiction, as required by *Schwab*.[5]

Therefore, all the *Schwab* elements are satisfied, and Hezbollah is subject to personal jurisdiction in this action.

**B. Damages**

Because this Court has subject-matter jurisdiction over this action and personal jurisdiction over Hezbollah, and Hezbollah's liability has been established by its intentional default, all that remains in order to enter final judgment by default against Hezbollah in favor of plaintiffs is to fix the amount of plaintiffs' damages, pursuant to Fed. R. Civ. P. 55(b)(2).

---

[5] Pursuant to Fed. R. Civ. P. 4(k)(2), the relevant forum for analyzing jurisdiction under the ATA is the United States as a whole. *Weinstock v. Abu Marzook*, 2019 WL 1470245, at *2 (S.D. Fla. Apr. 3, 2019). *Cf. Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 86-90 (D.D.C. 2006) (same).

7

On July 23, 2014, the D.C. Court entered a decision finding North Korea liable under FSIA § 1605A for plaintiffs' injuries resulting from the Hezbollah rocket attacks. (DE 56-57).[6] On October 1, 2014, the D.C. Court appointed a Special Master "to take evidence and file a report and recommendation regarding the measure of" plaintiffs' damages. (DE 58 at 1).

The plaintiffs submitted detailed and extensive damages evidence to the Special Master. (*See* Declaration of Robert J. Tolchin at Exhibit 1). After carefully considering and analyzing this evidence, the Special Master submitted reports containing his findings and recommendations to the D.C. Court. (DE 66-69; 71-73; 75-80).[7] Plaintiffs then moved for reconsideration of certain of the Special Master's findings and recommendations. (DE 81-82).

On September 30, 2016, the D.C. Court issued a Memorandum Opinion regarding plaintiffs' damages (DE 83). After carefully considering and reviewing the Special Master's reports, and the plaintiffs' motions for reconsideration (which it denied), the D.C. Court found that the following plaintiffs ("Recovering Plaintiffs") were entitled to compensatory damages of the types, and in the amounts, set forth below:

| Plaintiff | Pain & Suffering | Solatium | Economic Damages | Total |
|---|---|---|---|---|
| Chaim Kaplan | $2,000,000 | $1,000,000 | $0 | $3,000,000 |
| Rivka Kaplan | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Brian Erdstein | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Karene Erdstein | $2,500,000 | $1,000,000 | $0 | $3,500,000 |
| Mayan Erdstein | $1,500,000 | $0 | $0 | $1,500,000 |
| Chayim Kumer | $2,000,000 | $0 | $0 | $2,000,000 |
| Nechama Kumer | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Laurie Rappeport | $1,500,000 | $850,000 | $0 | $2,350,000 |
| Margalit Rappeport | $1,500,000 | $0 | $0 | $1,500,000 |
| Theodore Greenberg | $1,500,000 | $1,000,000 | $0 | $2,500,000 |

---

[6] That decision was also entered in the Iran Action and also found Iran liable under FSIA § 1605A.

[7] The Special Master also examined and confirmed the plaintiffs' U.S. citizenship, documentary proof of which had also previously been docketed at DE 47, Ex. FF.

8

| | | | | |
|---|---|---|---|---|
| Moreen Greenberg | $1,500,000 | $1,000,000 | $0 | $2,500,000 |
| Jared Sauter | $1,500,000 | $0 | $0 | $1,500,000 |
| Dvora Kaszemacher | $1,500,000 | $850,000 | $11,966.67 | $2,361,966.67 |
| Chaya Alkareif | $1,500,000 | $750,000 | $0 | $2,250,000 |
| Avishai Reuvane | $1,500,000 | $0 | $0 | $1,500,000 |
| Elisheva Aron | $1,500,000 | $0 | $0 | $1,500,000 |
| Yair Mor | $850,000 | $0 | $0 | $850,000 |
| Mikimi Steinberg | $850,000 | $0 | $0 | $850,000 |

(DE 83, *passim*). [8] The D.C. Court entered a final judgment, and an amended final judgment, in favor of the Recovering Plaintiffs, reflecting these amounts. (DE 84, 96).

The D.C. Court also found that plaintiff Danielle Sauter was not entitled to recover for her own pain and suffering because she is not a U.S. citizen, but was entitled to recover solatium damages under the FSIA, as the spouse of an injured U.S. citizen (*i.e.*, her husband, Jared Souter). (DE 83 at 4-5; 12-13). In this respect, however, the ATA differs from the FSIA. The FSIA permits recovery if either "the claimant or the victim was" was a U.S. national. 28 U.S.C. § 1605A(a)(2)(A)(ii). But the ATA is narrower, and allows recovery only by a U.S. citizen "or his or her estate, survivors, or heirs." 18 U.S.C. § 2333. Thus, where, as here, the American victim survived the attack, his non-American spouse cannot recover under the ATA. "[U]nder the ATA, someone who "survived the attack ... has no 'survivors' or 'heirs' that can recover for his injuries on his behalf." *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (quoting *Morris v. Khadr*, 415 F.Supp.2d 1323, 1337 (D. Utah 2006)). *See also Saperstein v. Palestinian Auth.*, 2006 WL 3804718, at *1 (S.D. Fla. Dec. 22, 2006) ("Because Mr. Saperstein was not mortally wounded, 'his estate, survivors, or heirs' are not able to bring such action."). Accordingly, and unfortunately, plaintiff Danielle Sauter cannot and so does not seek an award in this ATA case.

---

[8] That decision was also entered in the Iran Action and also found Iran liable under FSIA § 1605A.

The D.C. Court also held that all the other plaintiffs herein were not entitled to any award of damages, either because they lacked U.S. citizenship, or because they had failed to prove any damages. (DE 83, *passim*). Therefore, those plaintiffs cannot and do not seek awards in this case.

For the reasons below, the Recovering Plaintiffs respectfully request that this Court adopt the damages findings and awards made in their favor in the FSIA action:

***First***, it is well established that the self-same *types* of damages awarded to the Recovering Plaintiffs on their FSIA claims against North Korea and Iran – *i.e.*, pain, suffering, solatium, and economic losses – are all available under ATA, 18 U.S.C. § 2333. *See e.g. Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) ("Courts permit '[p]laintiffs to pursue claims for solatium [emotional] damages' under the ATA.") (quoting *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. 2011)); *Knox v. PLO*, 442 F. Supp. 2d 62, 80 (S.D.N.Y. 2006) (awarding solatium damages under the ATA); *Morris*, 415 F. Supp. 2d at 1337 (holding both that a U.S. citizen wounded in a terrorist attack "should be awarded damages for his lost income and pain and suffering" pursuant to the ATA, and that "the ATA permits claims by U.S. citizens for their nonphysical injuries that result from a terrorist attack on their family member if the attack victim is a U.S. citizen who survives the attack."); *Goldberg v. UBS*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) (citing cases and concluding that "every court that has construed § 2333(a)" has found that it permits both emotional and pecuniary damages); *Linde v. Arab Bank*, 384 F. Supp. 2d 571, 588-589 (E.D.N.Y. 2005) (same); *Sisso v. Islamic Republic of Iran*, 2007 WL 2007582, at *10 (D.D.C. 2007) ("injuries consisting of mental anguish and emotional pain and suffering… are cognizable under the ATA.").

Indeed, because the types of remedies available in ATA § 2333 actions and in FSIA § 1605A(c) actions are identical, courts hearing terrorism cases commonly consider and apply

damages findings from ATA cases in FSIA cases, and vice versa. "[C]ourts considering damages in cases decided under the Antiterrorism Act, 18 U.S.C. §§ 2331, *et seq.* have considered damages awards in other terrorism cases, including those decided under the related terrorism exception to the Foreign Sovereign Immunities Act ('FSIA'), 28 U.S.C. § 1605A (and the former terrorism exception 1605(a)(7) for cases decided prior to 2008)." *Weinstock v. Islamic Republic of Iran*, 2019 WL 1993778, at *4 (S.D. Fla. May 6, 2019). *See also e.g. Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2010 WL 11507790 (M.D. Fla. June 14, 2010) (using awards in prior FSIA and ATA cases interchangeably as guidance for determining award in ATA case); *Ungar v. Palestinian Authority*, 304 F. Supp. 2d 232, 267-77 (D.R.I. 2004) (same).

***Second***, plaintiffs have submitted to this Court (attached to the Declaration of Robert J. Tolchin) copies of the damages evidence that they submitted in their FSIA action.[9] This Court can therefore independently examine and assess that evidence.

***Third***, it would be a clear waste of judicial and party resources, and an unnecessary and painful burden on the plaintiffs, to require them to make a new damages presentation in this Court. *Cf. Rubin v. Hamas*, 2004 WL 2216489, at *3 (D.D.C. Sept. 27, 2004) ("The plaintiffs indicate that any evidence that they would present in the instant [ATA] case would be identical to the evidence presented in [their FSIA case] and that a second hearing 'would be a massive waste of judicial resources, and would needlessly force the plaintiffs to relive and reiterate the emotionally excruciating testimony previously given by them.' The court agrees. Accordingly, the court uses its previous findings of fact from [the FSIA case] to calculate appropriate damages.").

---

[9] Some of plaintiffs' damages evidence was also docketed at DE 81-82.

Accordingly, the Recovering Plaintiffs respectfully request that this Court adopt the damages findings and awards made by the D.C. Court in their actions against North Korea and Iran.[10]

Additionally, the ATA provides for treble damages. *See* 18 U.S.C. § 2333(a) ("Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism … may sue therefor … and shall recover threefold the damages he or she sustains."). Therefore, the compensatory damage awards made by the D.C. Court should be trebled in this case. *Cf. Rubin*, 2004 WL 2216489, at n.2 (trebling awards previously made in FSIA action, when entering judgment in ATA action).

### C. Technical Issues Relating to Entry of Final Judgment

There are two technical issues relating to the entry of final judgment in this case which the plaintiffs respectfully seek to bring to the Court's attention:

*First*, plaintiffs may need to seek to enforce their judgment in other jurisdictions. Plaintiffs are informed that certain foreign jurisdictions will not recognize awards of treble damages and, moreover, will not recognize an award that *includes* treble damages unless the compensatory, pre-trebling element of the award is specifically identified as such.

---

[10] Plaintiffs would respectfully call the Court's attention to the fact that their ATA claims against BSPLC in the Iran Action were severed and transferred to this district, and that on January 16, 2020, they moved for entry of default judgment against BSPLC in that case, requesting (as they have here) that the court adopt the damages findings and awards made in their FSIA action against North Korea and Iran. *See Kaplan v. Central Bank, et al.*, 19-cv-3142-ILG-RLM (E.D.N.Y.) at DE 88.

Plaintiffs alert the Court to the pendency of that motion in light of the potential for duplication of judicial resources and/or conflicting damages decisions from the same court; plaintiffs have no view as to what, if any, steps should be taken in that regard, and they certainly have no objection to that motion and this motion being decided separately, each in the normal course, if the Court is so advised.

Accordingly, plaintiffs respectfully request that the final judgment against Hezbollah set forth both the underlying compensatory awards, prior to trebling, as well as the total, trebled awards. *See Sokolow v. PLO*, 2015 WL 10852003 (S.D.N.Y. Oct. 1, 2015) (exemplar of final ATA judgment listing both the underlying compensatory awards and the post-trebling total awards).

***Second***, as discussed above, plaintiff Danielle Sauter is not entitled to recover under the ATA, and the D.C. Court found that certain other plaintiffs either did not demonstrate that they suffered compensable harm as a result of the rocket attacks,[11] or are not U.S. citizens.[12] Accordingly, in order to avoid any questions of finality, plaintiffs respectfully request that the Court enter a final judgment which expressly dismisses the claims of all these plaintiffs.

**D. This Action Should Not Be Dismissed for Failure to Prosecute**

In its electronic order of April 23, 2021, the Court stated that, upon review of the plaintiffs' motion for entry of default judgment, "the Court will re-consider whether dismissal [for failure to prosecute] as opposed to default judgment is appropriate."

For the reasons below, this action should not be dismissed for failure to prosecute:

Between the filing of this action in 2009 and its transfer to this Court on May 30, 2019, plaintiffs diligently and energetically pursued their claims against Hezbollah. As discussed above, the D.C. Court adopted a belt-and-suspenders approach to service of process on Hezbollah, which required the plaintiffs to expend significant resources to perfect service in multiple ways.

---

[11] These are plaintiffs Arye Kaplan, Menachem Kaplan, Chana Kaplan, Mushka Kaplan, Efraim Kaplan, Noa Erdstein, Netiya Erdstein, Ariel Erdstein, Malka Kumer and Chana Kumer. (*See* DE 83). These plaintiffs were minors when the case was filed, and were named in the complaint by their initials.

[12] The non-U.S. citizens are plaintiffs Michael Fuchs and Myra Mandel.

After perfecting service plaintiffs obtained entry of default against Hezbollah, but the D.C. Court then dismissed their claims against Hezbollah *sua sponte*. Plaintiffs appealed that dismissal to the D.C. Circuit as soon as it became final.

Notwithstanding Hezbollah's failure to appear, the D.C. Circuit appointed amicus counsel to challenge plaintiffs' appeal – *i.e.*, the appeal was fully and vigorously contested. After prevailing on the appeal, plaintiffs moved to sever and transfer their claims against Hezbollah to this Court, in an effort to preserve their viability.

Moreover, during the pendency of the motion to sever, and faced with both the risk that the D.C. Court might dismiss, rather than transfer, their ATA claims against Hezbollah, and the impending expiration of the statute of limitations on those claims,[13] plaintiffs filed a "protective suit" against Hezbollah in this court. *Kumer, et al. v. Hezbollah*, 18-cv-7449 (E.D.N.Y.).[14] Plaintiffs moved for substitute service on Hezbollah in that action on May 10, 2019. (*Id*. at DE 6).[15]

---

[13] *See* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c) (Jan. 2, 2013) (set out as a note to 18 U.S.C. § 2333 [Special Rule Relating to Certain Acts of International Terrorism]) (extending until Jan. 2, 2019, the statute of limitations on ATA claims arising from terrorist attacks that occurred after Sept. 11, 2001).

[14] Where a plaintiff faces procedural uncertainty in one venue and the looming expiration of a statute of limitations that would bar a new action elsewhere, the proper course is to file a "protective suit." *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986) ("Elementary prudence" requires a party "to file a protective suit" prior to the expiration of the statute of limitations, when personal jurisdiction is challenged in the first action); *Wager v. Frehner Constr. Co., Inc*., 2011 WL 971963 at *2 (D.S.D. Mar. 16, 2011) ("Frehner … filed a motion to dismiss for lack of jurisdiction … Plaintiff instituted a protective suit in the District of Nevada … against Frehner … to comply with the statute of limitations in that jurisdiction.").

[15] That motion was denied, as was a subsequent motion relating to service, and to date plaintiffs have not succeeded in effecting service in *Kumer*. Given that fact, and the current respective postures of the two proceedings, plaintiffs prefer to prosecute their claims against Hezbollah in this action.

Thus, by the time this action was transferred to this Court on May 30, 2019, plaintiffs had been vigorously and doggedly pursuing their claims against Hezbollah for a decade.

While plaintiffs had expected that the transfer to this Court would pave the way to establishing personal jurisdiction over Hezbollah (as discussed in their motion to sever, DE 94), that expectation proved overly optimistic, and after the transfer to this Court, plaintiffs were frustrated in their quest to identify and develop a basis for personal jurisdiction. The proceedings against Alexei Saab were initiated only in July 2019, and plaintiffs did not become aware of those proceedings (much less their implications for personal jurisdiction in this case), until mid-2020.

Plaintiffs also respectfully believe that their conduct following the Second Circuit's remand of this matter – immediately seeking leave to file the instant motion, and employing innovative and resourceful legal thinking to establish a basis for the exercise of personal jurisdiction – also militates against a dismissal for failure to prosecute.

Therefore, if the Court finds that plaintiffs have shown that personal jurisdiction over Hezbollah exists and that they are otherwise entitled to entry of final default judgment against Hezbollah, it should enter such judgment.

Alternatively, if the Court finds personal jurisdiction lacking, it should dismiss this case for lack of personal jurisdiction, and not on any merits or other prejudicial ground. Such an outcome would both be consonant with the earlier mandate of the D.C. Circuit, and allow plaintiffs the option of potentially pursuing their claims against Hezbollah in a foreign forum.

**WHEREFORE**, this motion should be granted.

Dated:   Brooklyn, New York
           May 23, 2021

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by: _____
     Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201