```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   CHAIM KAPLAN, et al.,                                    :
                                                            :   **MEMORANDUM DECISION AND**
                                                            :   **ORDER**
                          Plaintiffs,                       :
                                                            :   19-cv-3187 (BMC)
              - against -                                   :
                                                            :
                                                            :
   HEZBOLLAH, et ano.,                                      :
                                                            :
                                                            :
                          Defendants.                       :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This case is before me on the Report and Recommendation of Magistrate Judge Steven Tiscione in which he recommended denial of plaintiffs' motion for a default judgment. Judge Tiscione recommended denial on the ground that the Court lacks personal jurisdiction over defendant Hezbollah.

Familiarity with Judge Tiscione's thorough R&R is presumed, and thus I will not repeat at length plaintiffs' allegations giving rise to the case. But just to summarize (in a severely truncated fashion), this is an action brought by many United States citizens against the listed Foreign Terrorism Organization Hezbollah for injuries plaintiffs sustained as a result of Hezbollah missile attacks while plaintiffs were in Israel in 2006. It is brought under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and other related statutes.

The case has a far longer history than the 2019 index number would suggest. It was originally commenced in the United States District Court for the District of Columbia in 2009. Difficulties with service of process caused it to languish until special service was authorized,

and, after service and no appearance, the Clerk of Court of the District of Columbia noted Hezbollah's default on the record pursuant to Fed. R. Civ. P. Rule 55(a) in 2011. The district court then dismissed the case *sua sponte* for substantive reasons not material here. Subsequently, the Court of Appeals for the District of Columbia reversed and remanded, holding that the district court had to first determine whether it had personal jurisdiction over Hezbollah before it reached the substantive issues.

In 2019, at plaintiffs' request, the claims against Hezbollah were transferred here. I dismissed the case for failure to prosecute, as plaintiffs had taken no action against Hezbollah for ten years except service, but the Second Circuit reversed and remanded, calling for a more detailed analysis. Plaintiffs then moved for a default judgment, and that is how the case came to Judge Tiscione.

Plaintiffs' assertion of personal jurisdiction is predicated on the "conspiracy theory of jurisdiction." See Schwab Corp. v. Bank of America Corp., 883 F.3d 68 (2d Cir. 2018). Plaintiffs have shown that a member or associate of Hezbollah named Alex Saab had provided material support to and received military training from Hezbollah. Much of Saab's material support had occurred in the United States and in New York – for example, Hezbollah assigned Saab to surveil and gather intelligence on potential targets for attack in New York. Most of plaintiff's allegations about Saab's activities in New York came from a criminal complaint that had been filed in the Southern District of New York. Saab had also undertaken terrorist activity on behalf of Hezbollah in Lebanon.

The issue before Judge Tiscione was whether Hezbollah's activities in the United States through Saab made it subject to personal jurisdiction, since the conspiracy was operating in New York, or, instead, whether plaintiffs had to show that Saab's work in the United States for

2

Hezbollah (or at least Saab's work for Hezbollah somewhere) had some tie to the missile attacks that had injured plaintiffs. Relying principally on Waldman v. PLO, 835 F.3d 317 (2d Cir. 2016), and Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50 (2d Cir. 2012), and noting that this personal jurisdiction issue was "much closer" than the issue of subject matter jurisdiction, Judge Tiscione determined that the Constitution's Due Process clause required Saab's involvement in the actual missile attacks that had injured plaintiffs. Since plaintiffs had no evidence that Saab had such involvement, he recommended denial of plaintiffs' motion for a default judgment.

Most Circuits *require* a district court to examine personal jurisdiction before entering default judgment. See Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."); Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001) ("a district court has the duty to assure that it has the power to enter a valid default judgment," including therefore if it had personal jurisdiction); In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is void. To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."); Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997) ("[A] district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case."); Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. In reviewing its

personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment.").

That is not necessarily the case in the Second Circuit. It appears that the Second Circuit takes a more permissive approach to a district court's *sua sponte* examination of personal jurisdiction. Because personal jurisdiction, unlike subject matter jurisdiction, can be waived, see "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 123 (2d Cir. 2008), "a district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010). "But when a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment . . . [and] we agree with our sister circuits that before a court grants a motion for default judgment, it *may* first assure itself that it has personal jurisdiction over the defendant." Id. (emphasis added).

Judge Tiscione cited Sinoying as standing for the proposition that "[c]ourts *should* … as a threshold motion, assure themselves that they have subject matter jurisdiction and personal jurisdiction over the case and Defendant," see R&R at p. 6 (emphasis added). But "should" suggests a somewhat more compulsory obligation than Sinoying's use of the word "may." On the other hand, the Second Circuit's favorable citation to decisions from other circuits that appear to mandate the examination of personal jurisdiction in the default judgment context suggests necessity. Nevertheless, Sinoying expressly reserved on the issue:

> We need not – and explicitly do not – address here whether a district court must investigate its personal jurisdiction over defendant before entering a default judgment. We leave that issue for another day and hold only that a court may raise personal jurisdiction *sua sponte* when a defendant has failed to appear.

Sinoying, 619 F.3d at 213 n.7. My view is that the examination of personal jurisdiction in the default context should be discretionary, and this case furnishes a good example of why.

4

Personal jurisdiction should be examined on a motion for a default judgment when a plaintiff's submissions clearly show an absence of personal jurisdiction or even when they show that sustaining personal jurisdiction is highly unlikely. That is just judicial efficiency. It makes no sense for a court to enter a default judgment when there is a certainty or high likelihood that the judgment will never be enforced because of a lack of personal jurisdiction. Whether the defaulting defendant returns to the issuing court to set aside the judgment, see R" Best Produce, Inc., 540 F.3d at 123, or whether it opposes enforcement of the judgment in some other forum, see Harvey v. Fresquez, 479 F. App'x 360, 363 (2d Cir. 2012); Prete v. Lepore, 125 F.R.D. 572, 575 (D. Conn. 1989), the courts and the parties will have wasted substantial time and effort if it appeared all along that personal jurisdiction was absent.

When the question of personal jurisdiction is close or unsettled, however, as it is here, my view is that courts should hesitate before undertaking an examination of their personal jurisdiction over a defaulting defendant. It is not just that personal jurisdiction is a waivable defense as to which the court, by examining it *sua sponte*, is in some sense acting on behalf of the defaulting defendant. See Sinoying 619 F.3d at 213. It is that in a case where a defendant appears and challenges personal jurisdiction, the court is positioned to make a much better-informed decision. When a defendant that has appeared seeks to challenge personal jurisdiction (even when it has appeared only for that purpose), the court has a panoply of options with which to refine its decision. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). It can order the defendant to produce discovery on the issue of personal jurisdiction. See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 811-12 (S.D.N.Y. 2005). It can hold an evidentiary hearing to determine contested facts relating to personal jurisdiction. See Margouleff v. Beck, No. 18-cv-7334, 2019 WL 3296989, at *1 (S.D.N.Y. July 23, 2019). Or it

5

can consolidate discovery on personal jurisdiction issues with discovery on the merits and defer ruling on the personal jurisdiction issue until trial. See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 87 (2d Cir. 2013).

However, when a defendant fails to appear, it deprives the court, and, more importantly, the plaintiff, of any of these options. It handicaps the plaintiff by depriving her of discovery that she would have had if the defendant had not defaulted. It requires the plaintiff to make her case for personal jurisdiction blindfolded. In other words, the defendant's non-appearance results in determination of the personal jurisdiction issue on less – and often far less – than a full record. And because it is a waivable defense decided on such a truncated record, it may create, in some cases, an unseemly impression that the court is acting to protect the defaulting defendant rather than the scope of its authority. See Greathouse v. JHS Security, Inc., 784 F.3d 105, 119 (2d Cir. 2013) (in a default context, "[t]here is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case.") (Korman, D. J., concurring in part and dissenting in part). It is axiomatic that if Hezbollah had appeared and failed to assert a personal jurisdiction defense, that defense would have been waived. There is no reason it should be better off for not appearing at all.

This case is a good illustration of why judges need discretion in determining whether to consider personal jurisdiction in the default judgment context. Judge Tiscione's decision is predicated on evidence showing that although Saab gave material support to Hezbollah in both New York and the Middle East, there is no evidence that he was involved in the missile attacks that injured plaintiffs. But how do we know whether he was involved? If Hezbollah appeared and participated in discovery, plaintiffs would have an opportunity to find out. Indeed, there may have been (and there may be still) activity from other Hezbollah agents besides Saab in the

United States – surely, he is not the only one – who did in fact touch funds or bought, transported, or launched the missiles that allegedly injured plaintiffs.  And while I recognize that it may be unlikely that Hezbollah would provide such discovery even if it appeared, I don't see why it should be plaintiffs who are subject to a waivable defense when Hezbollah has decided to ignore the legal process of a United States Court.  That might put Hezbollah in a better position than if it had chosen to appear and provide discovery.

That brings me to my final point.  Due process obviously can't vary based on the moral reprehensibility of a defendant.  That is, even terrorists must be afforded the same due process as an innocent person.  But in determining whether to exercise discretion to raise defenses that a defendant has itself waived by failing to appear, I see no reason why the identity of the defendant cannot be considered.  Without in any way suggesting that plaintiffs' particular claims in this case have merit, it bears noting that defendant is an FTO widely known for causing the deaths of innocents, listed as such by the United States since 1997.  As Judge Tiscione noted, "Plaintiffs have been harmed by unconscionable acts and should those acts have a nexus with the United States sufficient to satisfy our Constitution, there should be recourse here for them."  To the extent that there is discretion for a court to decide whether to raise a personal jurisdiction defense *sua sponte*, there is no reason why Hezbollah should get the benefit of that discretion.

Accordingly, I decline to adopt the R&R, and refer the motion for a default judgment back to Judge Tiscione for further consideration.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
     June 19, 2022