UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHAIM KAPLAN, et al.,

                          Plaintiffs,                  **REPORT AND RECOMMENDATION**

     v.                                                 19-cv-3187 (BMC) (ST)

HEZBOLLAH

                          Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Plaintiffs, American citizens injured in rocket attacks in Israel in the summer of 2006, seek default judgment against Hezbollah for violations of the Antiterrorism Act (18 U.S.C. § 2331 *et seq.*). Plaintiffs' default judgment motion was previously referred to me for a Report and Recommendation in which I recommended the Court deny the motion for lack of personal jurisdiction. The Hon. Brian Cogan declined to adopt that Report and Recommendation and referred the motion back to me for further consideration. For the reasons contained herein, I recommend Plaintiffs' motion be GRANTED.

## BACKGROUND

      The Court presumes the parties' familiarity with the facts of this case and its procedural history from the first Report and Recommendation, issued February 28, 2022. *See* Rep. and Rec., ECF No. 113. As that R&R detailed, the only claims before this Court in this action are Plaintiffs' claims against Hezbollah for violations of the ATA, as alleged in Plaintiffs' "First Claim For Relief" in their amended complaint. *See* Pl. Am. Compl., ECF No. 5.

      After I issued my initial Report and Recommendation recommending denial on the basis of a lack of personal jurisdiction, Plaintiffs filed an objection to it. *See* ECF No. 225. Judge

1

Cogan, after reviewing the R&R, found that "examination of personal jurisdiction in the default context should be discretionary." 06/21/22 Mem. and Ord., 4, ECF No. 116.  He decided to exercise that discretion and elected to not examine the question of personal jurisdiction at this time noting that "the defendant is an FTO [Foreign Terrorist Organization] widely known for causing the deaths of innocents, listed as such by the United States since 1997." *Id.* at 7.  He then referred the motion back to me for further consideration. *Id.*

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, a plaintiff may obtain a default judgment where the defendant has failed to plead or otherwise defend an action. FRCP R. 55(a). Where the defendant has failed to plead or otherwise defend an action, the Clerk of Court must enter the party's default. *Id.*  After default has been entered, and the defendant does not appear to move to set aside the default, the plaintiff must then apply to the Court for a default judgment. FRCP R. 55(b)(2).

On a motion for default judgment, the defendant is deemed to have admitted to all well-pleaded allegations of liability in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992).  To be well-pleaded, the Court must find the Plaintiffs' factual allegations in their complaint, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz,* 577 F.3d 79 (2d. Cir 2009).  At the default stage, "[t]he legal sufficiency of [a plaintiff's allegations] is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Liberty Mut. Ins. Co. v. Project Tri-Force, LLC*, No. 18-CV-427 (AJN), 2019 WL 1349720, at *2 (S.D.N.Y. Mar. 26, 2019) (citing *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014)); *accord Belichenko v. Gem Recovery Sys.*, No.

17-CV-1731 (ERK) (ST), 2017 WL 6558499, at *2 (E.D.N.Y. Dec. 22, 2017) (citing *Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) and *Zapolski v. Fed. Republic of Germany*, No. 09-CV-1503 (BMC) (LB), 2009 WL 5184325, at *1 (E.D.N.Y. Dec. 28, 2009)). *Twombly* and *Iqbal* command that all elements of the Plaintiffs' claims must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).

## DISCUSSION

### I. Liability

Plaintiffs claim Hezbollah violated the Antiterrorism Act, specifically 18 U.S.C. §2333(a), when it attacked them in the summer of 2006 in Israel. Pl. Am. Compl. ¶¶ 52-60. The ATA provides, "Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. §2333(a). Under the ATA, a national of the United States is defined as "a citizen of the United States, or [] a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 18 U.S.C. §2331(2); 8 USC §1101(a)(22). The ATA defines "international terrorism," as: "[A]ctivities that [] involve violent acts or acts dangerous to human life that are a violation of the laws of the United States or of any State, or that would be a criminal violation if committed within [their] jurisdiction[,] appear to be intended [] to intimidate or coerce a civilian population[,] to influence the policy of a government by intimidation or coercion[,] or to affect

3

the conduct of a government by mass destruction[,]…and occur primarily outside the territorial jurisdiction of the United States…" 18 U.S.C. §2331(1).

Plaintiffs have established all elements of their ATA claims based upon the well-pleaded allegations of fact in the complaint. Each Plaintiff seeking default judgment and damages has been alleged to have suffered injury to their person, property, or business by reason of Hezbollah's rocket attacks.

Plaintiffs allege that between July 12, 2006 and August 14, 2006, Hezbollah fired thousands of rockets and missiles at civilians in northern Israel, where Plaintiffs were at the time. Pl. Am. Compl. ¶ 29. On July 13, 2006, Plaintiffs allege Chaim Kaplan, his wife Rivka Kaplan, and the Kaplans' children were injured by two separate rockets, one of which landed next to Mr. Kaplan's car and injured him, the other which stuck the family home and injured Ms. Kaplan and the children. *Id.* at ¶ 31. On the same day, Plaintiffs Reuvane and Aron are alleged to have been injured by a rocket fired at Safed. *Id.* at ¶ 32. Additionally, Plaintiffs allege Chayim Kumer suffered a nervous breakdown and had to be hospitalized as a result of the rocket attack in Safed, and that his wife, Nechama Kumer, was harmed as well as a result of his breakdown and hospitalization. *Id.* at ¶ 33.

Also on that day, the complaint alleges Plaintiffs Karene and Brian Erdstein and their children were at their family's home Safed. Karene, who was pregnant, suffered a miscarriage due to the stress of the rockets hitting close to the house. Brian was traumatized by the attacks and the loss of the baby and lost his job due to the collapse of tourism caused by the rocket attacks. Their children suffered emotional and psychological trauma as well. *Id.* at ¶ 35. Plaintiffs also allege Laurie Rappeport and her daughter were physically and emotionally harmed by a rocket that landed outside their home at approximately 7:00 PM on July 13, 2006. Ms.

Rappeport's daughter, who was playing outside, was blown into the air by the explosion. She was hospitalized and suffered severe emotional trauma from the incident. Ms. Rappeport also suffered emotional harm as a result of her daughter's injury. *Id.* at ¶ 36. Also on that date, though the complaint mistakenly says July 13, 2008, Chaya Kaszemacher, who subsequently changed her name to Chaya Alkareif, suffered psychological and emotional injury when a rocket fired by Hezbollah at Safed landed a few meters away from her. *Id.* at ¶ 40; Tolchin Dec., Exh. 1, 79-83, ECF No. 111-1.

The complaint also alleges on July 19, 2006, the art gallery owned by Yair Mor was hit by one of the rockets fired by Hezbollah into Safed, destroying the business and causing Mr. Mor severe emotional, psychological, and financial injuries. Pl. Am. Compl. at ¶ 37.

On August 11, 2006, at approximately 1:15 P.M., the complaint alleges Plaintiff Mikimi Steinberg's house in Safed was hit by a Hezbollah rocket. The strike severely damaged the house and her possessions. *Id.* ay ¶ 41.

Over the course of that same summer, the complaint alleges other Plaintiffs were also injured by Hezbollah's rocket attacks. Theodore Greenberg and Maurine Greenberg were proprietors of a tourism business in Safed. The rockets fired by Hezbollah into the area caused a complete halt to tourism there for several months during the peak tourism season which resulted in severe financial damages to them both. *Id.* at ¶ 38. Another Plaintiff, Jared Sauter, similarly owned a tourism business in the town of Rosh Pina in the Galilee. He was also caused severe financial damage by the halt in tourism due to the rocket attacks. His business collapsed, and he was forced to relocate to a different city. *Id.* at ¶ 42. Dvora Kaszemacher was the proprietor of an art gallery in Safed who also suffered from the complete halt in tourism in northern Israel during the peak tourism season. *Id.* at ¶ 39.

The Plaintiffs seeking to collect in this action have alleged in their complaint specific facts which show that each one of them was injured in his or her person, property, and/or business as a result of the rocket attacks in Israel in the summer of 2006. They have also alleged Hezbollah fired the rockets which injured Plaintiffs. *Id.* at ¶ 44 ("Defendant Hezbollah carried out the Hezbollah Rocket Barrage, thereby causing the injuries and harm suffered by the plaintiffs herein"). Hezbollah, by defaulting, has admitted these allegations as true.

Plaintiffs have also sufficiently alleged that the rocket attacks which injured them were acts of international terrorism. Plaintiffs allege "Hezbollah is and was a radical Islamic terrorist organization which views the State of Israel, the United States and other Western countries as its enemies…At all times, Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to destroy the State of Israel and murder or expel its Jewish residents [and] ethnically cleanse the territory of the State of Israel." *Id.* at ¶¶ 12-14. They allege Hezbollah sought to achieve this goal by "murdering or expelling [Israel's] Jewish residents through the use of terrorist attacks on Jewish civilians in Israel and elsewhere." *Id.* at ¶ 15. The complaint lists a long line of terrorist attacks by Hezbollah since its founding and notes, "Hezbollah has been designated by the United States Government as a Specially Designated Terrorist ('SDT') continuously since 1995, as a Foreign Terrorist Organization ('FTO') consistently since 1997, and as a Specially Designated Global Terrorist ('SDGT') continuously since 2001." *Id.* at ¶¶ 19-21. Hezbollah, by defaulting, has admitted these allegations as true.

The allegations in the complaint establish these rocket attacks meet the ATA definition of international terrorism. Firing rockets into civilian areas is certainly a violent act and it is also an act dangerous to human life. As Plaintiffs point out in their complaint, at least 43 Israeli civilians were killed in the Hezbollah rocket attacks in the summer of 2006. *Id.* at ¶ 55. The

Congressional Research Service in its report on Hezbollah (which Plaintiffs have attached to their motion for default judgment) found that in 2006, "…[O]ver the course of a 34-day period, [Hezbollah] launched more than 4,000 rockets into northern Israel killing 55 Israelis." Pl. Br., Exh. A, ECF No. 112-1.  Additionally, the rocket attacks would be violations of numerous state and federal laws if they occurred here, including but not limited to attempted murder and 18 U.S.C. §2332f.  Plaintiffs have also sufficiently alleged these attacks were carried out by Hezbollah with the intent to intimidate or coerce the Israeli civilian population and affect the conduct of the government of Israel by mass destruction.  Plaintiffs have additionally alleged these attacks occurred outside the territorial jurisdiction of the United States.  Therefore, Plaintiffs have established these were acts of international terrorism under the ATA.

Thus, Plaintiffs seeking to collect in this action have plausibly alleged facts that establish Hezbollah violated 18 U.S.C. §2333(a) and in doing so injured each of them.  Hezbollah is therefore liable to them under the ATA.

**II.     Damages**

Allegations of liability are admitted upon default, but allegations of damages are not. *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992).  Even upon default judgment, a court still has a duty to ensure there is a basis for the damages Plaintiff seeks. *Fustok v. Conticommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  The damages to be awarded must be ascertained "with reasonable certainty." *Styka v. My Merchs. Serv. LLC*, No. 14-CV-6198, 2016 U.S. Dist. LEXIS 34238, *11 (E.D.N.Y. Mar. 15, 2016) (quoting *Credit Lyonnais Sec., Inc. v. Alcantarea,* 183 F.3d 151, 155 (2d Cir. 1999)) (*adopted by* 2016 U.S. Dist. LEXIS 90977 (E.D.N.Y. June 28, 2016)).

Under the ATA, Plaintiffs can collect for injuries to their person, property, and/or business. *See* 18 U.S.C. § 2333(a). This Court has found that compensatory damages under the ATA may include pain and suffering and loss of solatium. *Miller v. Arab Bank, PLC,* 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019); *see also Rosenberg v. Lashkar-e-Taiba,* No. 10-cv-5381, 2016 U.S. Dist. LEXIS 87724, 2016 WL 11756917, *76-77 (E.D.N.Y. July 5, 2016); *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.,* 495 F. Supp. 3d 144, 153 (E.D.N.Y. 2020). Prevailing Plaintiffs can also collect for economic loss under the ATA, including lost wages. *Knox v. PLO,* 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006).

Here, ordinarily, the Court would require a damages inquest to establish the extent of each collecting Plaintiff's injuries. However, Plaintiffs argue this would be a waste of judicial resources and needlessly burdensome on Plaintiffs as such an analysis was already performed for the injuries sustained by these Plaintiffs due to the rocket attacks in this case. Pl. Br., 10-11, ECF No. 112.

The District of Columbia District Court, where this action was originally filed before these claims were severed, after entering judgment finding North Korea liable under the Foreign Sovereign Immunities Act (28 U.S.C. §1605A) for the same rocket attacks based on the same factual allegations, appointed a Special Master to "take evidence and file a report and recommendation regarding the measure of" these damages. *See* No. 09-cv-646 (D.D.C.) Docket, ECF No. 58. The Plaintiffs in this case submitted evidence to the Special Master in the North Korea action regarding how they had been harmed by the rocket attacks. Plaintiffs have submitted those to this Court for reference. *See* Tolchin Dec., Exh A.

The Special Master issued his findings, which the D.C. Court reviewed and adopted in its Memorandum Opinion setting the damage amounts. No. 09-cv-646 (D.D.C.) Docket, ECF No.

8

83. In that opinion, the D.C. Court awarded damages for pain and suffering, solatium, and economic damages, the same types of damages available under the ATA. *Id.*

Plaintiffs urge this Court to adopt the Special Master and D.C. District Court's findings of compensatory damages. "Courts considering damages under the ATA have frequently considered damages awards in other terrorism cases." *Lelchook v. Islamic Republic of Iran,* No. 16-cv-7078, 2020 U.S. Dist. LEXIS 221606, *23 (E.D.N.Y. Nov. 23, 2020) (citing *Knox,* 442 F. Supp. 2d at 78-80; *Smith ex rel. Smith v. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217, 234-35 (S.D.N.Y. 2003)). Given that the D.C. Court calculated damages for the same Plaintiffs with the same injuries based on the same conduct under the same damages scheme, the D.C. Court's calculation would be a "reasonable basis" for assessing damages in this case, provided the evidence submitted to this Court supports its findings.

Having reviewed the evidence submitted and the D.C. Court's Memorandum Opinion, I find that its assessment of damages was proper and approximated to a reasonable certainty the damages sustained by Plaintiffs in this action. There is one exception, however. As Plaintiffs point out, while the FSIA allows for non-U.S. citizens to recover solatium damages as a spouse of an injured U.S. citizen, the ATA does not. *See* 18 U.S.C. §2331(2); 8 USC §1101(a)(22); Pl. Br., 9. Therefore, Danielle Sauter, who was awarded damages in the D.C. Court's decision as a spouse of a U.S. citizen, but not a U.S. citizen herself, cannot collect where her spouse, the American victim, survived the attack. Plaintiffs only seek damages in this case for the named injured who are indeed U.S. citizens and who were found by the D.C. Court to have sustained damages. *See* Pl. Br. 9-10, ECF No. 112.

Thus, the compensatory damages to be awarded by this Court are as follows:

9

| Plaintiff | Pain & Suffering | Solatium | Economic Damages | Total | Citation From 09-cv-646 (D.D.C.) |
|---|---|---|---|---|---|
| Laurie Rappeport | $1,500,000 | $850,000 | $0 | $2,350,000 | ECF No. 66 |
| Margalit Rappeport | $1,500,000 | $0 | $0 | $1,500,000 | Id. |
| Yair Mor | $850,000 | $0 | $0 | $850,000 | ECF No. 67 |
| Mikimi Steinberg | $850,000 | $0 | $0 | $850,000 | ECF No. 68 |
| Theodore Greenberg | $1,500,000 | $1,000,000 | $0 | $2,500,000 | ECF No. 69 |
| Moreen Greenberg | $1,500,000 | $1,000,000 | $0 | $2,500,000 | Id. |
| Chaim Kaplan | $2,000,000 | $1,000,000 | $0 | $3,000,000 | ECF No. 71 |
| Rivka Kaplan | $1,500,000 | $1,000,000 | $0 | $2,500,000 | Id. |
| Chayim Kumer | $2,000,000 | $0 | $0 | $2,000,000 | ECF No. 72 |
| Nechama Kumer | $1,500,000 | $1,000,000 | $0 | $2,500,000 | Id. |
| Avishai Reuvane | $1,500,000 | $0 | $0 | $1,500,000 | ECF No. 73 |
| Elisheva Aron | $1,500,000 | $0 | $0 | $1,500,000 | Id. |
| Brian Erdstein | $1,500,000 | $1,000,000 | $0 | $2,500,000 | ECF No. 75 |
| Karene Erdstein | $2,500,000 | $1,000,000 | $0 | $3,500,000 | Id. |
| Mayan Erdstein | $1,500,000 | $0 | $0 | $1,500,000 | Id. |
| Dvora Kaszemacher | $1,500,000 | $850,000 | $11,966.67 | $2,361,966.67 | ECF No. 77 |
| Chaya Alkareif | $1,500,000 | $750,000 | $0 | $2,250,000 | Id. |
| Jared Sauter | $1,500,000 | $0 | $0 | $1,500,000 | ECF No. 78 |

The ATA also allows for treble damages. *See* 18 U.S.C. §2333(a). While Courts in this Circuit view this ATA's trebling provision as compensatory (*see e.g. Stansell v. Revolutionary Armed Forces of Colom.*, No. 16-MC-405, 2022 U.S. Dist. LEXIS 59138, 2022 WL 2530359, *55-69 (S.D.N.Y. Mar. 29, 2022)), some jurisdictions view the ATA's treble damages as punitive and unenforceable against a defendant such as Hezbollah. Therefore, Plaintiffs ask this Court to grant both the compensatory and treble damages, but to specifically designate the amount of such an award that constitutes compensatory damages in the event that they attempt to enforce this judgment in a jurisdiction that does not permit treble damages. Pl. Br., 12. Thus, the awards I recommend granting are laid out in the table below.

| Plaintiff | Compensatory Total | Treble Total |
|---|---|---|
| Laurie Rappeport | $2,350,000 | $7,050,000 |
| Margalit Rappeport | $1,500,000 | $4,500,000 |
| Yair Mor | $850,000 | $2,550,000 |

| | | |
|---|---|---|
| Mikimi Steinberg | $850,000 | $2,550,000 |
| Theodore Greenberg | $2,500,000 | $7,500,000 |
| Moreen Greenberg | $2,500,000 | $7,500,000 |
| Chaim Kaplan | $3,000,000 | $9,000,000 |
| Rivka Kaplan | $2,500,000 | $7,500,000 |
| Chayim Kumer | $2,000,000 | $6,000,000 |
| Nechama Kumer | $2,500,000 | $7,500,000 |
| Avishai Reuvane | $1,500,000 | $4,500,000 |
| Elisheva Aron | $1,500,000 | $4,500,000 |
| Brian Erdstein | $2,500,000 | $7,500,000 |
| Karene Erdstein | $3,500,000 | $10,500,000 |
| Mayan Erdstein | $1,500,000 | $4,500,000 |
| Dvora Kaszemacher | $2,361,966.67 | $7,085,900.01 |
| Chaya Alkareif | $2,250,000 | $6,750,000 |
| Jared Sauter | $1,500,000 | $4,500,000 |
| **Total** | **$37,161,966.67** | **$111,485,900.01** |

I further recommend that the claims of the remaining Plaintiffs, who were either found by the D.C. Court to not have properly demonstrated damages or are not U.S. citizens, be dismissed at Plaintiffs' request. Those include the claims of Arye Kaplan, Menachem Kaplan, Chana Kaplan, Mushka Kaplan, Efraim Kaplan, Noa Erdstein, Netiya Erdstein, Ariel Erdstein, Malka Kumer, Chana Kumer, Michael Fuchs, and Myra Mandel.

## CONCLUSION

For the reasons discussed herein, I recommend that the Court GRANT Plaintiffs' motion for default judgment and award Plaintiffs $111,485,900.01 in total damages, which is inclusive of $37,161,966.67 in compensatory damages. I further recommend that the Court dismiss the claims of the Plaintiffs not listed as damage recipients herein.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                                           /s/
                                            Steven L. Tiscione
                                            United States Magistrate Judge
                                            Eastern District of New York

Dated: Central Islip, New York
        September 16, 2022